UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**Andrew McKenna,**

    **Plaintiff**

    v.                                                  Case No. 17-CV-631

**Choice Electric LLC**
**Erik Danielson**

    **Defendant.**

# COMPLAINT

Plaintiff, by his attorneys, for his Complaint against Defendants state as follows:

1. This is an action under the Fair Labor Standards Act against both Defendants for failure to pay overtime wages required by the FLSA, against Choice Electric for failing to pay straight time and prevailing wages required by Wisconsin law, and against Erik Danielson in his personal capacity for theft by contractor for misappropriating the monies that Plaintiff McKenna should have, but did not receive for his work on Wisconsin prevailing wage projects.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3. This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

4. This Court has personal jurisdiction over the Defendants because the Defendants purposefully availed themselves of the privilege of, and performed substantial work within this District.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the Complaint, namely the underpaid work that McKenna performed for the Defendants, principally if not exclusively occurred within this District.

## THE PARTIES

6. Plaintiff McKenna is a resident of Wisconsin who performed work for Choice Electric as an electrician in both 2015 and 2016. A copy of the FLSA and Wisconsin prevailing wage consents signed by Plaintiff McKenna are attached to this Complaint.

7. Defendant Choice Electric is a Wisconsin limited liability company that was and is operated out of Co-Defendant Eric Danielson's home located at C4232 Wiesman Road in Stratford, Wisconsin. Choice Electric performs electrical work, primarily on prevailing wage projects, throughout Southern Wisconsin.

8. Co-Defendant Erik Danielson at all relevant times was the officer in charge of the day to day field operations of Choice Electric. In that capacity Danielson was responsible for determining Choice Electric's payroll policies; as well as the direction of monies that Choice Electric received from its clients, such as the owners and general contractors of the projects that it performed work on.

9. Choice Electric is an employer within the meaning of Wis. Stat. §109.03(1). Choice Electric is also an employer engaged in interstate commerce within the meaning of the

FLSA, 29 U.S.C. §203, by, for example, purchasing equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin.

10. Eric Danielson is an employer within the meaning of the FLSA by exercising control over Choice Electric's policies and procedures for compensating its employees that violated the FLSA.

## FACTS

11. Throughout 2015 and 2016 Plaintiff McKenna performed work on Wisconsin prevailing wage projects that, according to the Wisconsin Department of Workforce Development's Dictionary of Occupational Classifications should be classified as Electrician work. Upon information and belief all jobsite work McKenna performed in 2015 and 2016 were on Wisconsin prevailing wage projects.

12. Mckenna would perform work on prevailing wage projects both during weekdays and on weekends, and after he had already worked 40 hours for the workweek.

13. For his work on the prevailing wage projects in 2015 McKenna was paid a flat rate, computed as 35 hours of pay at $35.13 per hour.

14. During the only time in 2015 when McKenna worked fewer than 35 hours for a workweek, he was paid at the rate of $35.13 per hour for his actual number of hours worked, rather than for 35 hours.

15. McKenna did not receive any fringe benefits from Choice Electric throughout the entire time period that he was employed by Choice Electric.

16. In addition to working on jobsites as an electrician, McKenna also performed work at home for Choice Electric such as bidding jobs, sending and reviewing work related

emails, receiving and reviewing material specification sheets, and building templates, cages, and forms for Choice Electric.

17. McKenna often informed Defendant Danielson of the office and building work that he performed for Choice Electric at his home.

18. During 2016 McKenna was paid for each and every hour that he worked at the jobsite, but was not paid for office and building work that he performed at his home.

19. For his work in 2016 McKenna was paid at the hourly rate of $35.13 per hour during the first part of 2016, and at the hourly rate of $36.01 per hour during the latter part of 2016.

20. Upon information and belief, and based upon how Choice Electric compensated McKenna in 2016, the 35 hours of pay per week that McKenna received in 2015 was for his work at jobsites for Choice Electric, and did not include any compensation for the office and building work that he performed at home.

21. Defendant Danielson created and implemented the policy in 2015 to pay McKenna at the rate of $35.13 per hour for 35 hours per week for his jobsite work, regardless of how many additional hours McKenna may have worked on the jobsites, but only if McKenna actually worked 35 hours or more on jobsites during the workweek.

22. Defendant Danielson created and implemented the policy in both 2015 and 2016 to neither pay, nor count as hours worked, time spent by McKenna working at his home performing office and building work.

23. For each and every prevailing wage project on which McKenna performed work in 2015 and 2016, Choice Electric was paid in full for all work that it actually performed on the project, including for all hours worked by McKenna.

24. Defendant Danielson decided upon, and implemented the policy of paying McKenna at the rates of $35.13 and $36.01 per hour for some of the hours that he worked on prevailing wage projects; rather than at the correct prevailing wage rates required by the DWD's prevailing wage determination for all hours McKenna worked on the projects.

25. Defendant Danielson decided upon, and implemented the policy of paying McKenna at the straight time rate for all hours he worked on prevailing wage projects, including those hours that he worked after he had already worked more than 10 hours per day, 40 hours per week, or on Saturdays and Sundays.

26. Defendant Danielson decided to use monies that Choice Electric received from owners and general contractors, which were trust funds earmarked to pay McKenna in full for his work on the projects, to pay his personal and general business expenses instead.

**Count I.    Overtime Pay Claim Under the Fair Labor Standards Act.**

27. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 26 of the Complaint.

28. All of the hours that McKenna spent working at his home for Choice Electric were both integral and indispensable to Choice Electric's day to day operations, and were known to Choice Electric, so that all such hours must count as hours worked under the FLSA.

29. Choice Electric violated the FLSA when it did not pay to McKenna any overtime premium pay when he worked over 40 hours per week, including time spent working at home.

30. McKenna did not receive any overtime premium pay from Choice Electric even during workweeks when he worked for more than 40 hours on the jobsite for Choice Electric.

31. The monies that McKenna received from Choice Electric cannot constitute a salary because when McKenna worked for fewer than 35 hours during a workweek, he would receive hourly pay for his hours actually worked, rather than for 35 hours per week.

32. Because Defendant Danielson is responsible for designing and implementing Choice Electric's policies of paying McKenna for 35 hours rather than the higher number of hours that he actually worked, and that of excluding McKenna's home work from his hours worked, Danielson was also McKenna's employer, so that he is jointly and severally liable along with Choice Electric for FLSA overtime wages owed to McKenna.

33. Since the Defendants did not have any, let alone reasonable grounds for believing that their policies of not counting hours worked by, and of never paying overtime pay to McKenna complied with the FLSA, McKenna is entitled to 100% liquidated damages for all overtime pay that the Defendants owed to him.

34. Whether the Defendants' violations of the FLSA were willful is a moot issue, given that McKenna first began to work for the Defendants less than two years before the date when his FLSA consent form will be filed with the Court.

35. The plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against the Defendants.

**Count II.     Claim for Straight Time and Overtime Pay Under Wisconsin Law.**

36. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 35 of the Complaint.

37. McKenna's work at his home for Choice Electric must count as hours worked under Wisconsin law, for the same reasons that the work must count as hours worked under the FLSA.

38. Under DWD §272.12(1), all work performed by McKenna for Choice Electric must be paid.

39. Choice Electric, having promised to pay McKenna at the rates of $35.13 and $36.01 per hour for his jobsite work, cannot borrow any of the jobsite compensation to count as compensation for work that McKenna performed at home, given that its promise to pay McKenna at specified rates above the minimum wage for his jobsite work is fully enforceable pursuant to Wis. Stat. §109.03(1) and (5).

40. Since there is no agreement between Choice Electric and McKenna to pay Mckenna at the minimum wage for any of his work for Choice Electric, while any purported agreement between Choice Electric and McKenna to pay McKenna at the rate of $0 per hour for his work at home would violate DWD §272.12(1), McKenna is entitled to his full shop rate for each and every hour of straight time that he worked for Choice Electric.

41. For each and every hour of overtime work performed by McKenna away from the jobsite, he is entitled to receive both his shop rate, and hourly premium pay equal to ½ of the average straight time wage rate that he earned during the workweek.

42. McKenna may sue for all straight time and overtime wages owed to him through Wis. Stat. §109.03(5), which requires employers such as Choice Electric to pay to its employees all wages earned, including all wages required by law, within 31 days of when the wages were earned by the employees.

43. In his lawsuit brought under Wis. Stat. §109.03(5) McKenna is entitled to recover, in addition to all straight time and overtime wages owed to him, 50% increased damages authorized by Wis. Stat. §109.11(2)(b), along with his reasonable attorneys fees and costs of prosecuting his claims as authorized by Wis. Stat. §109.03(6).

**Count III.    Wisconsin Prevailing Wage Claim.**

44. Plaintiffs reallege, and incorporate by reference, the allegations contained in paragraphs 1- 43 of the Complaint.

45. Because McKenna did not receive any bona fide fringe benefits while working for Choice Electric, for each of his straight time hours worked on prevailing wage projects McKenna must receive the full prevailing wage package rate for the project that he worked on, which during the time period relevant to the complaint for the projects that McKenna worked on ranged between $53.24 and $59.92 per hour.

46. For each of his hours worked on prevailing wage projects in excess of 10 hours per day, 40 hour per week, or on Saturdays, McKenna was entitled to receive an overtime wage rate equal to 1.5 times his full cash wage for the project.

47. For each of his hours worked on prevailing wage projects on Sundays and holidays McKenna was entitled to receive an overtime wage rate equal to twice his full cash wage for the project.

48. Choice Electric failed to pay to McKenna all wages required by Wisconsin's prevailing wage laws when it paid McKenna at a wage rate lower than the required prevailing wage, for fewer hours than McKenna actually worked on prevailing wage projects, and without

any overtime premium pay for the hours worked by McKenna during overtime and weekend hours.

49. For Choice Electric's violations of Wisconsin's prevailing wage laws McKenna is entitled to bring a private right of action for twice the amount of prevailing wages owed to him, plus his attorneys fees and costs incurred in bringing this action.

**Count IV:     Theft by Contractor Against Eric Danielson.**

50. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-49 of the Complaint.

51. When Choice Electric was paid in full by owners and general contractors for its work on prevailing wage projects , on which McKenna performed work, pursuant to Wis. Stat. §779.02(5) the payments received from owners and general contractors are trust monies in the possession of Choice Electric, which Choice Electric cannot use for any other purpose, until all suppliers of labor and materials on the project have been paid in full.

52. Choice Electric violated Wis. Stat. §779.02(5) when it stole trust monies that were earmarked to pay the full straight time and overtime prevailing wages that it owed to McKenna, and used those monies to pay its general business expenses, as well as its owners' personal expenses instead.

53. Because Eric Danielson had the power and authority to direct the proper payment of monies that Choice Electric received from General Contractors, and was responsible for deciding to use the monies to pay other personal and business expenses rather than prevailing wages owed to McKenna, any theft by Choice Electric is also deemed by the operation of §779.02(5) to be theft committed by Danielson.

54.     Danielson therefore is personally liable to McKenna for all prevailing wages that McKenna would have received, had Choice Electric and Danielson complied with Wis. Stat. §779.02(5) in the manner that it distributed trust monies received from owners and general contractors for its work on prevailing wage projects on which McKenna performed work.

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1.     Finds that Choice Electric and Eric Danielson are jointly and severally liable to McKenna for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2.     Finds that Choice Electric is liable to McKenna for all unpaid straight time and overtime wages that they are owed under Wisconsin law, plus 50% increased damages, and their attorneys fees and costs arising out of the Plaintiffs' claims under Wisconsin law;

3.     Finds that Choice Electric is liable to McKenna for all prevailing wages owed, plus 100% increased damages, and their attorneys fees and costs arising out of the Wisconsin prevailing wage laws, with Eric Danielson personally liable for all prevailing wages owed;

4.     Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

Dated this 2nd day of May, 2017.

/s/Yingtao Ho_____
Yingtao Ho
yh@previant.com
Wis. Bar #1045418
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI  53203
Telephone: 414-271-4500
Fax: 414-271-6308